# United States District Court



## SOUTHERN DISTRICT OF INDIANA

**UNITED STATES OF AMERICA**

**V.**

**JAMES D. VICTERY**

### CRIMINAL COMPLAINT

CASE NUMBER: 1:16-mj-00882

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about December of 2013, in Marion County, in the Southern District of Indiana defendant did,

Count 1:  Wire Fraud, in violation of Title 18 U.S.C. §1343;
Count 2:  Possession of False Papers to Defraud United States, in violation of Title 18 U.S.C. 1002,
Count 3:  Money Laundering-Concealment, in violation of 18 U.S.C. § 1956(a)(B)(i),
Count 4:  Money Laundering-Spending, in violation of Title 18 U.S.C. § 1957.

I further state that I am a Special Agent, and that this complaint is based on the following facts:

See attached Affidavit

**Continued on the attached sheet and made a part hereof.**

_____
Special Agent, Elizabeth M. Carlson, FBI

**Sworn to before me, and subscribed in my presence**

November 29, 2016
**Date**

at   Indianapolis, Indiana _____

_____

Tim A. Baker, U.S. Magistrate Judge
**Name and Title of Judicial Officer**

**Signature of Judicial Officer**

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Elizabeth M. Carlson, Special Agent, Federal Bureau of Investigation, being duly sworn, hereby depose and state:

## AFFIANT

1.     I am a Special Agent of the Federal Bureau of Investigation ("FBI") currently assigned to the Indianapolis Field Office, white collar crime squad, which has investigative responsibility for complex financial fraud and other white collar criminal matters. I have been a Special Agent with the FBI for six years. I am a Law Enforcement Officer of the United States and I am empowered to conduct investigations, execute warrants, and to make arrests for offenses committed against the United States enumerated in, but not limited to, Title 18 United States Code and Title 42 the United States Code.

2.     Your Affiant has participated in the investigation of the offenses described within this affidavit. The statements contained in this affidavit are based on information provided by, and conversations held with other Special Agents and employees of the FBI; employees of the United States Air Force (USAF); Special Agents for the Office of Inspector General Department of Interior; Special Agents for the United States Department of Defense; Attorneys for the Department of Justice; Government witnesses; and on your Affiant's experience and background as a Special Agent for the FBI. This affidavit contains information necessary to support probable cause for this application. It is not intended to include each and every fact and matter known to the FBI and/or the other agents assisting in this investigation.

1

3.      In my capacity as a Special Agent with the FBI, I am participating in an investigation into violations of Title 18 U.S.C. §1343 (Wire Fraud), Title 18 U.S.C. 1002 (Possession of False Papers to Defraud United States), Title 18 U.S.C. 1956(a)(1)(B)(i) (Money Laundering-Concealment), and Title 18 U.S.C. 1957 (Money Laundering-Spending) in relation to the activities of James D. Victery (Victery).  Based on information developed during this investigation and as set forth in detail below, there is probable cause to believe that Victery has committed the aforementioned criminal violations.

4.      Victery is listed in public records as the owner of Tripartite Escrow Agreement Management, LLC ("TEAM").  In summary, TEAM is a Limited Liability Company, registered in the State of Indiana, with a Tax Identification Number ("TIN") of 26-2334587.  TEAM was established October 10, 2007.  TEAM's business locations are purportedly located at 3528 Prospect Street, Indianapolis, Indiana; 2727 East 55th Street, Suite 20821, Indianapolis, Indiana; and 5868 East 71 Street, Suite E, Indianapolis, Indiana 46220. In addition, I have identified many business names which are either dba's for Victery and TEAM, or businesses closely associated with them, including:

- Team Insurance and Surety

- Team Financial Services, LLS

- The Escrow Company, LLC

- TEAM Insurance and Bond

- Surety Team Insurance and Bond

- Old National, Inc., d.b.a, Old National Escrow, Old

National Escrow Company, Old National Escrow Services, and Old National Financial and Services.  (None of these "Old National" entities have any connection with Old National Bank, which Victery and TEAM frequently use to set up accounts as discussed in paragraphs 5 and 6 below, but instead appear to be used for the express purpose of creating confusion that they are associated with Old National Bank.)

Victery is listed as TEAM's owner, Escrow Manager, Escrow Attorney, Registered Agent, and Senior Trustee for the Escrow Company of TEAM.  James W. Victery is the son on Victery.  James W. Victery was interviewed and said that Victery was the president of the TEAM and that James W. Victery worked for Victery.  However, James W. Victery was not aware of all of Victery's business practices.

5.      Victery and TEAM purport to assist small construction companies obtain government contracts by supplying the bonds and sureties required by the federal government in the bidding and contracting process.  Bonds are typically required twice in the federal government contracting process, first as a guarantee of the bid price ("bid bond"), and subsequently as a guarantee of satisfactory completion of the contract.  Small companies use a bonded, third-party escrow agent in the federal bidding and contracting process if the company itself is not bonded.  In such a scenario, the bonded, third-party escrow agent provides the required sureties and then acts as an escrow agent for payments made by the federal government to the contractor as the contract is completed.

6.     Upon the completion of specific milestones during a contracted project, contractors submit invoices to a designated government contracting officer. That contracting officer verifies the invoices are correct and the work has been completed successfully. The contracting officer then authorizes government funds to be electronically deposited into the contractor's bank account registered in the government's system for managing contracts, known as "System for Awards Management" or SAMs. Typically, these payments are made to the contractor's account.  However, TEAM establishes what it claims are "escrow accounts" on behalf of the contractors. On several of these "escrow accounts" Victery listed himself as the only authorized signatory on the account. Victery also had the contractors change their account numbers within the SAMs system to the established escrow account number as a means of diverting funds for Victery's personal gain.

7.     During the course of this investigation, your Affiant has determined that while Victery and TEAM offer services, and receive compensation, as a bonded, third-party escrow agent on federal government contracts, TEAM is not bonded and the bonds it has submitted to the federal government in support of such contracts are fraudulent. The fraudulent documents were submitted to the federal government in an effort to obtain ill-gotten gains.

8.     In June of 2014, the FBI became aware that TEAM was purportedly submitting fraudulent invoices for government contracts to FedSTAR Capital (FedSTAR).  FedSTAR is in the business of purchasing invoices (accounts receivable) at a discount from government contractors.  Thus, FedSTAR is essentially a factoring

4

business, expediting the availability of working capital (money) for contractors that do not want to wait on the government's payment process.

9.     In or about December of 2013, FedSTAR purchased two invoices directly from TEAM for two separate United States Air Force (USAF) contracts purportedly bonded through TEAM.  The two invoices were:

    a.     An invoice dated December 2, 2013, totaling $320,124.00 (USAF contract FA4654C-00; hereafter "Invoice 1");

    b.     An invoice dated December 15, 2013, totaling $334,390.00 (USAF contract FA4654-13-C-0006; hereafter "Invoice 2").

10.     TEAM was purportedly the escrow manager on both contracts, and TEAM represented to FedSTAR that the invoices TEAM was selling to FedSTAR were unpaid but approved for payment by the USAF.  Based on those representations, FedSTAR purchased the invoices at 90% of their face value. FedSTAR wired the funds to the escrow accounts established and managed by TEAM.  As part of an Assurance Agreement between FedSTAR and TEAM, TEAM agreed to release funds from the escrow account directly to FedSTAR when TEAM ultimately received payment from the USAF.

11.     By April of 2014, four months after FedSTAR purchased Invoice 1 and Invoice 2, they had yet to receive any payment from TEAM.  Suspicious it had been defrauded, FedSTAR contacted the authorities.

12.     After receiving this information, your Affiant compared the invoices and supporting documents provided to FedSTAR by TEAM with the official invoices

5

provided to the USAF by the contractors.  The following discrepancies were identified:

**Invoice 1**

- The version of Invoice 1 given by TEAM to FedSTAR is dated December 2, 2013 and has a net payment due of $320,124.00.  As a result of that representation FedSTAR paid TEAM by interstate wire transfer $288,111.60 on December 5, 2013.  The official USAF Invoice 1 is dated October 3, 2013, and listed a net payment due of only $93,240.00.

- On the version of Invoice 1 TEAM gave to FedSTAR, Joyce M. Nudge was listed as the approving contracting officer but the signature was not dated.  The official USAF Invoice 1 was approved by Joyce M. Nudge and dated October 9, 2013.  The USAF has confirmed that the funds for this invoice were released on October 25, 2013, in two check totaling $93,240.00.

**Invoice 2**

- The version of Invoice 2 given by TEAM to FedSTAR is dated December 15, 2013, for a net payment due of $334,390.00.   As a result of that representation, on December 18, 2013, FedSTAR paid by interstate wire transfer $300,951.00 to TEAM.  However, the official USAF Invoice 2 is dated April 10, 2014, and listed a net payment due of only $141,001.19.

- Additionally, on the version of Invoice 2 TEAM gave to FedSTAR, "Lou

Matthews" was listed as the United States Contract Specialist who had purportedly authorized payment. The official USAF Invoice 2, however, was reviewed and signed on April 4, 2014, by USAF contracting officer Don Roque. The Air Force has no record of any contracting specialist named Lou Matthews in its employ.[1]

13.    During the course of the investigation, Paul Bagley (Bagley) of FedSTAR was interviewed. Bagley said that when FedSTAR was not paid by TEAM, Bagley independently contacted Thomas Cook (Cook), an officer of the contractor that provided the services involved in Invoice 2. Cook said he did not sign Invoice 2. Bagley then contacted Joseph Dickman, an officer of the contractor that purportedly provided the services involved in Invoice 1. Dickman said Invoice 1 was actually a copy of an invoice that had already been submitted and settled by the government in September of 2013.

14.    In addition to the false representations in the invoices provided by TEAM to FedSTAR, it also appears that other documents provided by TEAM to the USAF and other government entities (including United States Coast Guard, Department of Navy, Department off Army, Department of Veteran Affairs, Department of Interior, and Department of Agriculture) in support of securing payments on government contracts also contained materially false information. To date, your Affiant has identified approximately 28 instances of false documentation by TEAM in connection with government contracts.

15.    In April of 2014, the USAF reviewed a line of credit issued by a purported

---

[1] During the course of this investigation, Your Affiant has determined that Lou Matthews is a known female

surety on a government contract and determined that there were no financial assets supporting the surety bond.  Moreover, the paperwork submitted in connection with the line of credit showed that it was drawn on the "Old National Bank, Trust and Escrow Department," and the corresponding addresses and phone numbers were not associated with Old National Bank.   Following these discoveries, the USAF requested that the contractor provide new, authentic and notarized payment and performance bonds prior to the project being completed.

16.     On May 15, 2015 the Air Force received a FedEx package containing a notarized letter purporting to show a surety bond from "Old National Surety Division" with "Team Insurance and Bond" as an agent for the contract.  Team Insurance and Bond" is a dba for TEAM.  The documentation was purportedly notarized by Aaron Weaver as an employee of Chase Bank, on January 1, 2014.   Aaron Weaver of Chase Bank was subsequently interviewed and confirmed he did not notarize the document.  Old National Bank confirmed that Old National Surety is not connected with Old National Bank.

17.     Following the review of computers seized during the execution of a Federal search warrant at Victery's residence located at 4958 East 72nd Street, Indianapolis, Indiana, the following documents were located on the hard drive of the computer found on the desk in James D. Victery's home office: a copy of fraudulent Invoice 2, a copy of USAF contract FA4654C-0004, and the Amended Schedule a to the Receivable Purchase Agreement.

---

associate of James D. Victery.

18.     In documents provided by FedSTAR to the FBI, Invoice 2 was sent from jvictery@teamanagement.com to FedSTAR as an attachment in an email dated December 18, 213 at 7:46 am. The email signature line indicates Victery drafted the email.

19.     In documents provided by FedSTAR to the FBI, Invoice 1 was sent from jvictery@teamanagement.com to FedSTAR as an attachment in an email dated December 4, 2013 at 11:28am.  The email signature line indicates Victery drafted the email.

20.     The investigation indicates that Victery and TEAM were in significant financial distress at the time of the conduct described in this affidavit.  Subcontractors of Victery and TEAM on various projects say that Victery was delinquent on payments to them. A financial analysis of TEAM's US Bank account ending in 6325 identified two wire transfers from FedSTAR totaling $300,951.00 were deposited on December 18, 2013.  Per the bank signature card, James W. Victery was the only signer on the account. Even though James W. Victery was the only signer on the bank account that the fraudulent proceeds were deposited into, Victery was the one who emailed both fraudulent invoices to FedSTAR.  Also, a copy of Invoice 2 was found on Victery's computer.   In addition, the analysis shows:

- The day before the $300,951 deposit there was $750.84 in this account.
- Within 11 weeks of the deposit, all but approximately $10,000 of the money in the account had been spent, almost all of it to contractors TEAM owed money to on other projects.

21.     A financial analysis of TEAM's, First Financial Bank account ending in 6364 identified one wire transfer from FedSTAR totaling $288,111.60 was deposited on

9

December 5, 2013. Per the bank signature card, James D. Victery was the only authorized signer on the account.  In addition, the analysis shows:

- The day before the $288,111.60 deposit, there was $3,962.08 in this account.

- Within two weeks, Victery had spent $254,068.16 of the money in the account, almost all of it was either paid to contractors that were owed money for other projects or loaned to contractors to meet payroll obligations.

22.    After the $288,111.60 deposit on December 5, 2013, the following wire transfers out of TEAM's First Financial Bank account:

| Date | Recipient | Amount | Purpose |
|------|-----------|--------|---------|
| 12/5/2013 | All American Construction | $145,000 | Loan to cover payroll |
| 12/6/2013 | All American Construction | $55,000 | Loan to cover payroll |
| 12/10/2013 | PS Construction | $16,768.37 | Unknown |

Each of the above monetary transactions represents a separate count of 18 U.S.C. 1957 because the wire transfers used proceeds from wire fraud to make the wire transfers. Each of the wire transfers exceeded $10,000.  Victery knew that the money used in the above monetary transactions came from the fraudulent invoices because Victery did not have enough money in the First Financial Bank account without the fraudulent proceeds. Victery made the first wire transfer the same day the fraudulent proceeds were received.

23. After the $288,111.60 deposit on December 5, 2013, the following wire

transfers out of TEAM's First Financial Bank account:

| Date | Recipient | Amount | Purpose |
|------|-----------|--------|---------|
| 12/12/2013 | American Safe Seal | $5,000 | Payment for government contract work |
| 12/18/2013 | American Safe Seal | $7,000 | Payment for government contract work |

Each of the above monetary transactions represent a separate count of Title 18 U.S.C.

1956(a)(1)(B)(i) because of all of the reasons discussed in paragraph 22.  In addition,

Thomas Cook (Cook), an officer of American Safe Seal, said that his understanding was

that any money provided by Victery would be proceeds from government contract work

that American Safe Seal had completed. Victery disguised that the funds used to pay

American Safe Seal were actually proceeds of wire fraud paid by FedSTAR for fraudulent

invoices submitted by Victery.

24.     Your Affiant in verifying the address 5868 East 71st Street, Suite E #327,

Indianapolis, Indiana, listed for TEAM, identified this address to be the location of a

Mailing Station retail print center. The Application for Delivery of Mail Through Agent

was signed by Victery on February 10, 2011. At the time of registration Victery provided

a copy of his Indiana driver's license and his Lead Renovator Certification card.

25.     TEAM also utilized the address of 3528 Prospect Street, Indianapolis,

Indiana. This location is listed as Victery's residence on his Indiana Driver's License with

an expiration date of October 8, 2012. This address is also located on the adjacent

property to Lou Matthew's residence, located at 3530 Prospect Street, Indianapolis,

Indiana. Lou Matthews is Victery's mother.

26.     The address associated with Old National Trust and Investment

Management is listed as 2727 East 55th Street, Suite 20821, Indianapolis, Indiana 46220.

This address is the address for the United States Post Office, Bacon Station, Indianapolis,

Indiana. The P.O. Box 20821 was purchased by Escrow Team Old National.

James@urcard.org was the email provided on the application for the P.O. Box.


Elizabeth M. Carlson, Special Agent
Federal Bureau of Investigation


Sworn to before me this 29 th day of November, 2016


Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

12